## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

SUE RATCHFORD, KAY MITCHELL,   )
GINA NUCKOLLS, COURTNEY   )   CIVIL ACTION NO.:
ROBERSON and PATTY BECKNELL,   )   <u>  2:17-cv-00100-WCO  </u>
on behalf of themselves and of all others   )
similarly situated who consent to   )
representation,   )   FAIR LABOR STANDARDS
     Plaintiffs   )   ACT, COLLECTIVE ACTION
   )   PURSUANT to 29 U.S.C. sec.
     v.   )   216(b)
   )
REGIONS FINANCIAL CORPORATION,
REGIONS BANK, a subsidiary of   )
REGIONS FINANCIAL CORPORATION  )   JURY TRIAL DEMANDED
     Defendants   )

## <u>COMPLAINT</u>

Come now SUE RATCHFORD (Ratchford), KAY MITCHELL, (Mitchell)

GINA NUCKOLLS (Nuckolls), COURTNEY ROBERSON (Roberson), and

PATTY BECKNELL (Becknell), herein "Plaintiffs", and for themselves and on

behalf of others similarly situated, assert claims against REGIONS FINANCIAL

CORPORATION, herein "RFC", and REGIONS BANK, a subsidiary of

REGIONS FINANCIAL CORPORATION, herein collectively referred to as

"Defendants" under the Fair Labor Standards Act, 29 U.S.C. §201 et. seq.

("FLSA"), for unpaid overtime compensation, liquidated damages, reasonable

expenses of litigation and attorneys' fees, on the grounds set forth below.

## JURISDICTION AND VENUE

1.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1337 and 29 U.S.C. §216 (b).

2.    This Court has venue for all causes of actions stated herein pursuant to 28 U.S.C. §1391(b)(2) as some of the acts alleged as a basis for the federal claims took place within this Court's jurisdictional boundaries. Further, Defendants do business in this District, including conducting business by way of offices in this District, and are subject to this Court's personal jurisdiction.

3.    Venue is appropriate in this Division as some of the acts alleged as a basis for the federal claims took place within this Division's jurisdictional boundaries.

## PARTIES

### The Plaintiffs

4.    Plaintiffs worked as Mortgage Loan Originators (MLO's) for Defendants.

5.    Plaintiff Sue Ratchford is a former employee of Defendants, who worked as an MLO, and with one exception noted below, was regularly denied

overtime compensation during the term of her employment. Plaintiff Ratchford began her employment for Defendants on or about June 5, 1995, and worked for them until her separation on or about November 9, 2015. Plaintiff Ratchford worked in Defendants' Whitfield County, Georgia office. Plaintiff Ratchford is a resident of Whitfield County, Georgia.

6. Plaintiff Kay Mitchell is a former employee of Defendants, who worked as an MLO, and with one exception noted below, was regularly denied overtime compensation throughout the term of her employment. Plaintiff Mitchell began her employment for Defendants on or about November 8, 2011 and worked for them until November 14, 2015. Plaintiff Mitchell worked in Defendants' Hamilton County, Tennessee office. Plaintiff Mitchell is a resident of Hamilton County, Tennessee.

7. Plaintiff Gina Nuckolls is a former employee of Defendants, who worked as an MLO, and who was regularly denied overtime compensation throughout her term of employment. Plaintiff Nuckolls began her employment for Defendants on or about April 19, 1994 and worked for them until March 31, 2014. Plaintiff Nuckolls worked in Defendants' Pickens County Georgia office. Plaintiff Nuckolls is a resident of Cherokee County, Georgia.

8.     Plaintiff Roberson is a former employee of Defendants, who worked as an MLO during two periods of time:  first, from May 30, 2006 through August 1, 2012 and second, from May 14, 2013 until April 15, 2016.  Plaintiff Roberson was regularly denied overtime compensation throughout the second term of her employment. Plaintiff Roberson worked in Defendants' Dawson, Hall and Lumpkin County offices.  Plaintiff Roberson is a resident of Dawson County, Georgia.

9.     Plaintiff Becknell is a former employee of Defendants, who worked as an MLO, and with one exception noted below, was regularly denied overtime compensation throughout her term of employment.  Plaintiff Becknell began her employment for Defendants on or about October 10, 2010 and worked for them until September 11, 2015.  Becknell worked in Defendants' Hamilton County, Tennessee office. Becknell is a resident of Hamilton County, Tennessee.

## The Defendants

10.     Defendant RFC is a financial holding company incorporated under the laws of the state of Delaware, with its corporate headquarters and principal place of business in Birmingham, Alabama. At all times relevant to this action, RFC has conducted its banking operations through its subsidiary, Regions Bank, an

4

Alabama-chartered commercial bank that is a member of the Federal Reserve System, with its headquarters and principal place of business in Birmingham, Alabama. Both Defendants may be served by way of Corporation Service Company, who serves as the Registered Agent for both Defendants, and who is located at 40 Technology Parkway South, Suite 300, Norcross, Georgia, 30092.

## FACTS

### Defendants' Operations

10. Defendant RFC is listed on the New York Stock Exchange (NYSE; RF), with over $100 billion in assets, and is a member of the S&P 500 stock index. RFC, through its subsidiaries, forms one of the United States' largest full-service providers of consumer and commercial banking, wealth management, mortgage, and insurance products and services.

11. As stated above, Defendant RFC conducts its banking operations through Defendant Regions Bank. In its 2016 Annual Report, RFC stated that it "serves customers across the South, Midwest and Texas, and through its subsidiary, Regions Bank, operates approximately 1,500 banking offices and 1,900 ATMs."

12.     Defendants are engaged in business in the financial field, and accordingly, offer consumer banking services related to residential mortgages. In furtherance of its consumer banking services, and at all times relevant to this suit, Defendants have employed MLO's, and they have conducted mortgage loan origination operations at facilities located throughout the United States.

13.     During all times relevant to this suit, Defendants have employed approximately 700 MLO's who worked in its offices, branches, and locations in approximately 15 states.

14.     At all times relevant to this suit, Defendants had an annual gross volume of sales made that was more than $500,000; had employees engaged in commerce; and were enterprises engaged in commerce within the meaning of 29 § U.S.C. 203(s)(1).

15.     Regions Bank has been an employer of MLO's, including the Plaintiffs, within the meaning 29 U.S.C. § 203(d), and it is not exempt from FLSA's overtime provisions.

16.     Regions Bank has suffered or permitted MLO's like these Plaintiffs to work. Among other things, Regions Bank has exercised control and supervision over MLO's like these Plaintiffs. Further, Regions Bank has had the right to

directly or indirectly hire, fire, or modify the employment conditions of MLO's like these Plaintiffs. Thus, as an economic reality, MLO's like these Plaintiffs have been dependent on Regions Bank for their employment.

17. RFC has been an employer of MLO's, including the Plaintiffs, within the meaning of 29 U.S.C. §203 (d) and (g), and it is not exempt from FLSA's overtime provisions.

18. RFC has suffered or permitted MLO's like these Plaintiffs to work. Among other things, RFC has administered various benefits plans to its employees, including the Plaintiffs. Thus, as an economic reality, MLO's like these plaintiffs have been dependent on RFC for their employment.

19. Defendants have acted as joint employers of MLO's within the meaning of the FLSA, 29 U.S.C § 203(d) and (g), and its implementing regulations (including 29 C.F.R. § 791.2), because among other things, Regions Bank is acting directly in the interest of RFC.

## The Plaintiffs' History of Working Overtime

20. All the Plaintiffs worked as MLO's and worked in excess of forty hours per week without receiving the appropriate overtime compensation.

21.     At all times relevant to this lawsuit, Defendants were aware that all the named Plaintiffs, and likely other similarly-situated MLO's, were working overtime hours without compensation.

## Sue Ratchford

22.     Throughout the term of her employment with Defendants, Plaintiff Sue Ratchford worked in excess of 40 hours per week during each pay period. Yet, with the exception of one pay period, she was not compensated in accordance with the FLSA for the time she worked in excess of 40 hours per week (the "overtime worked").

23.     During one pay period, Plaintiff Ratchford turned in her hours of work, including the amount of overtime worked. On that occasion, Plaintiff Ratchford was paid appropriately for her hours worked, including the appropriate rate and amount for the overtime worked. However, Plaintiff Ratchford was told by her immediate supervisor to not turn in any further overtime hours or include overtime hours in any time records she turned in, even if she worked in excess of 40 hours per week. (*See* Affidavit of David Viduna, at pg. 3, attached as Exhibit 1).

24.     Plaintiff Ratchford was therefore forced to perform uncompensated, "off the clock" overtime work, including work during her lunch breaks, before and after business hours, on the weekends, and while on vacation.

25.     Plaintiff Ratchford, during the period at issue in this lawsuit, worked in each pay period approximately 20 to 30 hours per week of overtime, for which she was not compensated.

26.     Plaintiff Ratchford entered into a tolling agreement and extension with Regions Bank. (*See* Ratchford Tolling Agreement and Extension, attached as Exhibit 2 hereto). In the tolling agreement, the parties agreed, inter alia, that any and all damages awarded to Plaintiff Ratchford under FLSA shall be calculated as if the Complaint had been filed on June 20, 2016, and that the Plaintiff be put in the same position she would have been had she filed suit on June 20, 2016.

27.     The duration of the tolling agreement continued until 30 days after either party gave notice to the other of intent to terminate.  On April 20, 2017, Plaintiff Ratchford terminated the tolling agreement. (*See* Termination Email and Letter, attached as Exhibit 3 hereto).

## Kay Mitchell

28.     During the entire time of her employment with Defendants, Plaintiff Mitchell worked in excess of 40 hours per week during each pay period. Yet, with the exception of one pay period, she was not compensated in accordance with the FLSA for the overtime hours she worked.

29.     During one pay period, Plaintiff Mitchell turned in her hours of work, including the amount of overtime worked.  On that occasion, Defendants paid Plaintiff Mitchell appropriately for her hours worked, including the appropriate rate and hours for the overtime worked. However, Plaintiff Mitchell was told by her immediate supervisor to not turn in any further overtime hours or include overtime hours in any time records she turned in, even if she worked in excess of 40 hours per week.

30.     Plaintiff Mitchell was therefore forced to perform uncompensated, "off the clock" overtime work, including work during her lunch breaks, before and after business hours, at night, and on the weekends.

31.     Plaintiff Mitchell, during the period at issue in this lawsuit, regularly worked approximately 15 to 20 hours per week of overtime in each pay period, for which she was not compensated.

10

## Gina Nuckolls

32.     Throughout the entire term of her employment with Defendants, Plaintiff Gina Nuckolls worked in excess of 40 hours per week in each pay period, yet was not compensated in accordance with the FLSA for the overtime hours she worked.

33.     Plaintiff Nuckolls was forced to perform uncompensated, "off the clock" overtime work, including work during her lunch breaks, before and after business hours, at night, on the weekends, and while on vacation.

34.     Plaintiff Nuckolls, during the period at issue in this lawsuit, worked approximately 15 to 25 hours per week of overtime in each pay period, for which she was not compensated.

35.     Plaintiff Nuckolls entered into a tolling agreement with Regions Bank. (*See* Nuckolls Tolling Agreement, attached as Exhibit 4 hereto). In the tolling agreement, the parties agreed, inter alia, that any and all damages awarded to Plaintiff Nuckolls under FLSA shall be calculated as if the Complaint had been filed on August 8, 2016, and that the Plaintiff be put in the same position she would have been had she filed suit on August 8, 2016.

36.     The duration of the tolling agreement continued until 30 days after either party gave notice to the other of intent to terminate.  On April 20, 2017, Plaintiff Nuckolls terminated the tolling agreement. (*See* Termination Email and Letter, attached as Exhibit 3 hereto).

## **Courtney Roberson**

37.     Throughout her terms of employment with Defendants, Plaintiff Courtney Roberson worked in excess of 40 hours per week during each pay period, yet she was not compensated in accordance with the FLSA for the overtime hours she worked.

38.     Plaintiff Roberson was forced to perform uncompensated, "off the clock" overtime work, including work during her lunch breaks, before and after business hours, at night, and on the weekends.

39.     Plaintiff Roberson, during the period at issue in this lawsuit, worked approximately 5 to 10 hours per week of overtime in each period, for which she was not compensated.

**Patty Becknell**

40.     Throughout her term of employment with Defendants, Plaintiff Patty Becknell worked in excess of 40 hours per week during each pay period. Yet, with the exception of one pay period, she was not compensated in accordance with the FLSA for the overtime hours she worked.

41.     During one pay period, Plaintiff Becknell turned in her hours worked, including the amount of overtime worked. On that occasion, Becknell was paid appropriately for her hours worked, including the appropriate rate and amount for overtime worked. However, Plaintiff Becknell was told by her supervisor to never again turn in overtime hours for pay, even if she worked in excess of 40 hours per week.

42.     Plaintiff Becknell was therefore forced to perform uncompensated, "off the clock" overtime work, including work during lunch breaks, before and after business hours, at night, and on the weekends.

43.     Plaintiff Becknell, during the period at issue in this lawsuit, worked approximately 10 to 15 hours per week of overtime in each pay period, for which she was not compensated.

## Facts Common to All MLO's Employed by Defendants

44.     All of the named Plaintiffs are similarly situated with other former and current MLO's employed by Defendants.

45.     On information and belief, during all times relevant to this suit, Defendants classified all Plaintiffs and other similarly-situated MLO's (and continues to so classify MLO's) as non-exempt under the FLSA.

46.     The primary duty of all Plaintiffs and other similarly-situated MLO's was making sales of mortgages for Defendants. (*See* Viduna Aff., at 1). Further, the primary duty of all MLO's currently employed by Defendants remains making such sales.

47.     MLO's, including these Plaintiffs, were paid on a "monthly draw" basis, which required them to originate and ultimately close a certain number of loans per month to cover their draw. (Viduna Aff., at 3).  The draw provided each month to MLO's was subtracted from the monthly production of closed loans, with the excess paid to the MLO or the deficit carried over to the next month as a balance due against future closed production. (Viduna Aff., at 3). Further, the compensation of all MLO's currently employed by Defendants remains on such a monthly draw basis.

48.     All Plaintiffs and other similarly-situated MLO's performed other tasks in furtherance of their primary duty of making sales, including ensuring proper documentation, processing, and compliance of all loan applications. (*See* Viduna Aff., at 1-2). Further, the tasks performed by all similarly situated MLO's currently employed by Defendants remain in furtherance of their primary duty of making sales.

49.     Although the primary duty of MLO's is sales, Defendants also required the Plaintiffs and other similarly situated MLO's to spend all necessary time to satisfy other customer service needs, even though the tasks not directly related to their primary sales duties were not directly factored into the method of compensation or productivity requirements for MLO's. These tasks include providing "floor coverage," such as greeting and assisting walk-in customers at bank branches. Defendants' practice of requiring MLO's to perform tasks not directly related to their primary sales duties – while not factoring the time spent on such duties into their method of compensation or productively requirements – persists for those similarly situated MLO's currently employed by Defendants.

50.     All Plaintiffs and other similarly-situated MLO's performed their work primarily at the Defendants' offices and/or branches or at Plaintiffs' home

offices. Further, upon information and belief, those similarly situated MLO's currently employed by Defendants perform their work primarily at Defendants' offices and/or branches or at their home offices.

51.    None of the Plaintiffs or other similarly-situated MLOs' primary duties included management duties; customarily or regularly directing the work of at least two or more other full-time employees; or having any authority regarding the hiring, firing, advancement, promotion, or changing the status of other employees. The same is true for similarly situated MLO's currently employed by Defendants.

52.    None of the Plaintiffs or other similarly-situated MLOs' primary duties related to the management or general business operations (as such terms are understood in 29 U.S.C. § 213(a)(1) or 29 C.F.R. §541) of Defendants.  As Plaintiffs' primary duty was to sell mortgages, none of the Plaintiffs nor other similarly-situated MLOs' primary duties included the exercise of discretion and independent judgment with respect to matters of significance (as such terms are understood in 29 U.S.C. § 213(a)(1) or 29 C.F.R. §541.203). The same is true for similarly situated MLO's currently employed by Defendants.

53.     None of the Plaintiffs or other similarly-situated MLO's were acting as professional employees for Defendants, as that term is utilized by 29 U.S.C. § 213(a)(1) and 29 C.F.R §541.300. The same is true for similarly situated MLO's currently employed by Defendants.

54.     All Plaintiffs and other similarly-situated MLO's worked for the Defendants in excess of 40 hours per week each week during the entire terms of their employment, but, with the nominal exceptions mentioned above, were denied overtime compensation, and were instructed by Defendants' management to never turn in any overtime for pay, regardless of whether they had worked overtime. The same is true for similarly situated MLO's currently employed by Defendants.

55.     During the relevant time period, all Plaintiffs were employees of Defendants RFC and Regions Bank within the meaning of FLSA, 29 U.S.C. § 203(e)(1). The same is true for those individuals currently servings as MLO's.

**The Formula and Defendants' Knowledge of Overtime Violations**

56.     As MLO's, Plaintiffs' primary duties are related to making sales of mortgages for Defendants. Thus, Plaintiffs and other MLO's were expected to promote and originate loans, take loan applications, and take all further necessary steps to have the loans processed and closed or finalized. Defendants expected the

Plaintiffs to originate, produce, and finalize as many loans as possible throughout the terms of their employment to respond to market demand and maximize income for the Defendants.

57.     During all times relevant to this lawsuit, Defendants have employed "Mortgage Production Managers" to supervise MLO's like the Plaintiffs.

58.     One mortgage production manager overseeing the work of Plaintiffs Ratchford and Nuckolls was David Viduna, whose Affidavit is attached hereto. At the time of his retirement, Viduna was responsible for mortgage production throughout Northwest Georgia. (Viduna Aff., at 1).

59.     In turn, Defendants employ regional "Area Managers" to oversee Mortgage Production Managers (such as David Viduna).  At the time of his retirement, Viduna reported to East Region Area Manager Debra Douglas. (Viduna Aff., at 1).

60.     During the terms of Plaintiffs' employment, Defendants utilized a "**Formula**," stating that MLO's, such as the Plaintiffs and others similarly situated, should be able to originate and finalize (or "close") seven to eight (7 to 8) loans per month while working no more than 40 hours per week. (Viduna Affidavit, at pg. 3).

61.     Thus Defendants, by creation of the Formula, expected and predicted that the Plaintiffs and all similarly situated MLO's, could produce, on average, 90 loans per calendar year (7.5 loans per month), while working no more than 40 hours per week.

62.     The Formula was periodically communicated to management and supervisory staff and thereby to the Plaintiffs. (Viduna Aff., at pg. 2).

63.     Area Manager Debra Douglas disseminated the Formula to Mortgage Production Manager David Viduna and other Mortgage Production Managers. In periodic conference calls between Douglas, Viduna, and the other Mortgage Production Managers (numbering approximately nine throughout the "East Region"), the Formula was discussed on numerous occasions.  (Viduna Aff., at 2). The Mortgage Production Managers, in turn, discussed the Formula with the MLO's under their supervision. (*Id.*).

64.     Upon information and belief, the Formula was disseminated for use to mortgage production managers throughout Regions' entire area of operations. Further, upon information and belief, the Formula is still in use today, and at all other times relevant to this lawsuit.

65.     It was known to Defendants' management that the "Formula"
significantly underestimated the amount of work hours necessary to perform all the
duties Plaintiffs and the other MLO's were required to perform.  (Viduna Aff., at
pg. 3).

66.     Regardless of the accuracy of the Formula relative to the amount of
time necessary to meet its requirements, Defendants' upper management did not
condone employees reporting overtime or hours worked in excess of 40 hours per
week.  MLO's were regularly instructed by their supervisors to not report any
overtime hours. (Viduna Aff., at pg. 2).

67.     Nonetheless, to meet market demand, Plaintiffs and other similarly-
situated MLO's produced loans in numbers far exceeding 90 per year while
employed by Defendants.

68.     According to David Viduna, it was "an open secret, even a 'joke'
among the managers that, due to the demands of their work load, loan originators
like Sue Ratchford often worked far in excess of 40 hours per week." (Viduna Aff.,
at 2).

69.     Some MLO's, including the Plaintiffs and likely others, produced over 150 loans, some between 200 to 250 loans. Some Plaintiffs produced over 300 loans per calendar year for the Defendants.

70.     Therefore, it was well-known to the Defendants, including to the managerial and supervisory staff, as well as other employees throughout Regions, that Plaintiffs and all the MLO's who were producing loans above the expected "90 per year" average, were, according to Defendants' Formula, working far in excess of 40 hours per week without the requisite overtime compensation. (Viduna Aff., at pp. 2-3).

71.     For instance, Viduna opined that Plaintiff Ratchford "was physically present in the bank, working, an average of at least fifty (50) to sixty (60) hours per week, at a minimum." (Viduna Aff., at 2). Viduna based this opinion on his own observations, her record of productivity, and conversations with her. (*Id.*).

72.     Moreover, MLO's regularly worked overtime just to meet their job requirements. In fact, all of MLO's supervised by David Viduna regularly worked overtime hours during Viduna's term of employment. (Viduna Aff., at 3).

73.     Accordingly, district managers such as David Viduna knew that the Formula did not accurately reflect – but rather grossly under-estimated – the

amount of time required to discharge the MLO's' duties. In fact, it was an "open secret" discussed among district managers that MLO's were working substantial amounts of overtime (without compensation) in order to keep up with the work load. (Viduna Aff., at 3).

74.     On at least three occasions involving the named Plaintiffs, MLO's turned in overtime hours for pay, and Defendants paid the overtime at one and one-half times the regular rate of pay. Defendants thereby acknowledged that Plaintiffs, and likely other MLOs, were necessarily working substantial overtime to keep up with market demand, but at the same time instructed them to never again turn in overtime hours for pay.

75.     Defendants instructed its MLO's to not turn in overtime hours for pay even though it knew that the MLO's were not exempt from overtime pay requirements under FLSA.  Defendants knew or should have known that on March 24, 2010, the Department of Labor's Wage and Hour Division issued "Administrator's Interpretation No. 2010-1," which stated, among other things, that employees who perform the typical job duties of a mortgage loan officer, including mortgage loan origination, do not qualify as bona fide administrative employees exempt under 29 U.S.C. § 213(a)(1).

76.     As a uniform policy, the Defendants did not compensate Plaintiffs at the rate of one and one-half times their regular rate of pay (as that phrase is defined in the FLSA and 29 C.F.R. §778.120) for hours worked over 40 each week.

77.     Defendants knew their discouragement or denial of overtime benefits was improper and concealed such from the Plaintiffs. Therefore, the applicable statutes of limitation in this action should be tolled.

78.     Upon information and belief, Defendants still utilize the Formula as it pertains to the workloads of current MLO's.

### The Plaintiffs and Others Similarly Situated

79.     The named Plaintiffs bring this action as a collective action on behalf of themselves and all other similarly situated current and former employees who consent to representation, pursuant to 29 U.S.C § 216(b).

80.     Plaintiffs seek to represent the following similarly situated employees ("the Proposed Class"):

> All current and former employees of RFC and Regions Bank who performed the primary job duties of mortgage loan originator, regardless of office location, title, or seniority, at any time from three years prior to the filing of this action or the court-approved notice mailing date; and

who (i) Worked in excess of 40 hours per workweek, as proven by Defendants' own records, or otherwise; and (ii) Were not paid proper overtime compensation required by federal law.

81.     Each of the named Plaintiffs consents to participate in this suit and to represent the interests of the Proposed Class.  The consents signed by the named Plaintiffs are incorporated herein together as Exhibit 5.  The signed consent of other similarly situated individuals to participate in this suit may be filed with the Court from time to time as they "opt-in" to this litigation, pursuant to 29 U.S.C. § 216(b).

82.     Plaintiffs are appropriate representatives for current or former employees of Defendants who, for three years prior to the date of this lawsuit, worked in their positions as MLO's (and/or those who performed any other nonexempt functions similar to those that Plaintiffs performed), whose rights were violated because of Defendants' knowing, intentional and willful refusal to pay them the overtime compensation to which they were entitled under the FLSA.

83.     Plaintiffs and the members of the Proposed Class were employees engaged in interstate commerce expressly covered by the protections of the FLSA, 29 U.SC. § 207(a).

84.     During all times relevant to this lawsuit, Plaintiffs and the members of the Proposed Class were Defendants' employees within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

85.     During all times relevant to this lawsuit, Plaintiffs and the members of the Proposed Class were non-exempt employees, each of whom worked during the term of their employment over forty (40) hours per week without receiving overtime compensation of one and one-half times their regular rate of pay, subject to the limited exceptions referenced above.

86.     During all times relevant to this lawsuit, Defendant Regions Bank (a) asserted control over the day-to-day operations of the locations where Plaintiffs and the members of the Proposed Class were employed; (b) exercised responsibility for the supervision of Plaintiffs and the members of the Proposed Class; (c) had the ability to hire, fire, or modify the employment conditions Plaintiffs and the members of the Proposed Class; and (d) decided not to pay proper overtime compensation to Plaintiffs and the members of the Proposed Class. Therefore Regions Bank has acted as the employer of Plaintiffs and the members of the Proposed Class for purposes of the FLSA, 29 U.S.C. § 203(d).

87.     During all times relevant to this lawsuit, Defendant RFC, among other things, (a) asserted control over the day-to-day operations of Defendant Regions Bank at the locations where Plaintiffs and the members of the Proposed Class were employed; and (b) had direct or indirect control over the compensation of Plaintiffs and the members of the Proposed Class. Therefore RFC has acted as the employer of Plaintiffs and members of the Proposed Class for purposes of the FLSA, 29 U.S.C. § 203(d).

88.     Further, neither employer is exempt from the overtime obligations of an "employer" under the FLSA, 29 U.S.C. § 201 et seq.

89.     During the terms of employment of Plaintiffs and the members of the Proposed Class, Defendants knowingly, intentionally, and willfully violated the FLSA by failing and refusing to pay them the overtime compensation to which they were entitled (subject to the limited exceptions noted above), even though Defendants expected, required, and allowed Plaintiffs, and others similarly situated, to work overtime.

90.     Plaintiffs and the members of the Proposed Class were forced to work overtime hours, but instructed not to turn in or otherwise document any overtime hours in Defendants' payroll systems. This was true even when Plaintiffs and the

members of the Proposed Class originated and closed loans in excess of the Formula.

91.    For more than three years prior to date of the lawsuit, Defendants knowingly, intentionally and willfully violated the FLSA by failing to pay persons similarly situated to Plaintiffs the overtime compensation to which they were entitled.  Defendants were at all times aware that all the named Plaintiffs, and other members of the Proposed Class, were working in excess of 40 hours per week, but were not paid for their overtime hours.

92.    The pattern and practice of Defendants' failure and refusal to pay earned overtime compensation to the Plaintiffs, and to all similarly situated employees, was widespread throughout the company, was well known to management, and was communicated by management to employees, including Plaintiffs, and likely others similarly situated. (*See* D. Viduna Affidavit, at pg. 2-3). Although they were required and expected by Defendants to work overtime, the Plaintiffs and other similarly situated employees throughout Regions were instructed never to turn in for pay or document overtime hours in Defendants' payroll systems. (D.Viduna Affidavit, at 2-3).

93.     Further, Defendants knew their discouragement or denial of the overtime compensation earned by Plaintiffs and the members of the Proposed Class was improper, and Defendants concealed such from the Plaintiffs such that the applicable statutes of limitation in this action are tolled.

94.     Defendants are in exclusive possession of the names, addresses, and employment records of the members of the Proposed Class.

95.     Plaintiffs, on behalf of themselves and the Proposed Class, seek the recovery of unpaid overtime wages, liquidated damages, pre-judgment and post-judgment interest, and reasonable expenses of litigation and attorney's fees.

96.     Pursuant to 29 U.S.C § 216(b) of the FLSA, the members of the Proposed Class are entitled to court-administered notice of this lawsuit in order that they may elect to join the Plaintiffs in prosecution of this action.  Further, at a minimum, the Court should toll the statute of limitations from the time of the filing of this lawsuit or the time the Court-ordered notice is issued to the time that other individuals opt-in to the Class, or for some other reasonable period of time.

97.     The proposed Class of current and former employees of Defendants as described above is so numerous that joinder of all members is impracticable.

98.     There are questions of the law and fact common to the members of the Proposed Class, including, but not limited to:

(A)     Whether Plaintiffs and members of the Proposed Class were entitled to receive overtime compensation for hours worked in excess of 40 hours per workweek;

(B)     Whether Defendants engaged in a pattern or practice of failing to provide true and correct wage statements itemizing all wages earned and all deductions from wages for Plaintiffs and the members of the Proposed Class;

(C)     Whether Defendants engaged in a pattern or practice of discouraging or forbidding Plaintiffs and members of the Proposed Class from submitting overtime hours worked for compensation;

(D)     Whether Defendants engaged in a pattern or practice of requiring, expecting and permitting Plaintiffs and the members of the Proposed Class to work without payment at the applicable overtime rates for all time in excess of forty (40) hours per week;

(E)     Whether Defendants knowingly, intentionally and willfully failed to pay Plaintiffs and the members of the Proposed Class at the legally required

overtime rates for all work the Defendants expected, required and permitted them to perform.

99.   Plaintiffs' claims encompass the challenged practices and course of conduct of Defendants. The legal issues raised in this action apply equally to Plaintiffs and the members of the Proposed Class.

100.   The prosecution of separate actions by individual members of the proposed Class would create a risk of inconsistencies or varying adjudication with respect to individual members of the class, which would establish incompatible standards of conduct for the Defendants.

101.   The prosecution of separate actions by individual members of the class would create a risk of adjudication with respect to individual members of the class that would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, or would substantially impair their ability to protect their interests.

## COUNT

### Violation of Fair Labor Standards Act

### (On Behalf of the Plaintiffs and All Those Similarly Situated)

102. Plaintiffs re-allege the proceeding paragraphs above and incorporate herein them by reference as if fully set forth here.

103. Plaintiffs, and other employees similarly situated, worked significantly more than forty (40) hours per week on a regular basis during the relevant time periods. Nonetheless, during all of their respective terms of employment, Plaintiffs and other employees similarly situated did not receive overtime compensation at one and one-half times their regular rate of pay (with the nominal exceptions described above) from Defendants, in violation of the FLSA, 29 U.S.C. §207.

104. By engaging in the above-described conduct, Defendants knowingly, intentionally, and willfully violated the FLSA with respect to Plaintiffs and to other employees similarly situated. Defendants did not have any good faith basis for believing that their failure and refusal to pay overtime compensation to Plaintiffs and other employees similarly situated was in compliance with the FLSA.

105. Defendants communicated to Plaintiffs, and to other similarly situated employees, the expectation that they work in excess of forty (40) hours per week. However, at the same time, Defendants instructed, through management, the

Plaintiffs and other similarly situated employees, not to turn in their overtime hours for pay.

106. As a direct and proximate result of the above-described conduct, Plaintiffs and those employees who are similarly situated to Plaintiffs have lost significant wages.

107. Defendants are in possession of records showing the amount of overtime that the Plaintiffs and other employees similarly situated worked. At a minimum, Defendants are in possession of records showing the amount of loans that the Plaintiffs and other employees similarly situated originated and closed during the time period relevant to this case.

108. Alternatively, Defendants' failure to make, keep, or preserve records of hours worked by the Plaintiffs and other employees similarly situated constitutes a violation of 29 U.S.C. §211(c).

109. Said violations give rise to a claim for relief under the FLSA, for Plaintiffs and those employees who are similarly situated for :

(A)    Unpaid overtime compensation accrued during the liability period;

(B)    Liquidated damages in an amount equal to the unpaid compensation;

(C)    Pre- and post-judgment interest; and

(D)    Reasonable attorney fees and expenses of litigation, pursuant to 29 U.S.C § 216.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray that this Court do the following:

(A)    Certify this as a collective action pursuant to 29 U.S.C § 216, and to provide direct notice to all eligible Class Members, including individual notice to all members who can be identified by reasonable effort on part of the Defendants;

(B)    Require Defendants to pay Plaintiffs and all eligible members of the Class, who elect to participate in this action by filing proper written notice with the Court, damages for lost overtime compensation accrued during the liability period, calculated at one and one-half times the proper rate that Plaintiffs and such Class members would have received but for the Defendants' unlawful conduct;

(C)    Require Defendants to pay each of the Plaintiffs, and all eligible members of the Class who have elected to opt-in, liquidated damages as provided for under the FLSA;

(D)     Award Plaintiffs and all eligible members of the Class pre- and-post-judgment interest;

(E)     Award Plaintiffs and all eligible members of the Class their reasonable attorneys' fees, costs and expenses of this lawsuit;

(F)     Permit a trial by jury on all issues so triable; and

(G)     Provide such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs herein demand a jury trial on all claims for which they have a right to a jury.

This 22nd day of May, 2017.

*[signatures on following page]*

**BARNES LAW GROUP, LLC**

/s/ Roy E. Barnes
Roy E. Barnes
Ga Bar No. 039000
J. Cameron Tribble
Ga Bar No.  754759
31 Atlanta Street
Marietta, Ga.  30060
Phone: 770-227-6375
Fax: 770-227-6373
roy@barneslawgroup.com
ctribble@barneslawgroup.com

**R. LESLIE WAYCASTER, JR P.C.**

/s/ R. Leslie Waycaster, Jr.
R. Leslie Waycaster, Jr.
Ga. Bar No. 742500
Timothy H. Allred
Ga. Bar No. 013195
130 W. King Street
Dalton, GA 30720
Phone: 706-226-0100
leslie@waycaster-law.com
tim@waycaster-law.com

*Attorneys for Plaintiffs*